IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| BMO BANK, N.A. ) | |
| ) | Case No. 3:24-cv-00142 |
| v. ) | Chief Judge Campbell |
| ) | Magistrate Judge Holmes |
| NOBLE TRANSPORTATION LLC ) | |

To: Honorable William L. Campbell, Jr., Chief United States District Judge

### REPORT & RECOMMENDATION

Pending before the Court is the unopposed motion of Plaintiff BMO Bank, N.A. for default judgment against Defendant Noble Transportation LLC. (Docket No. 19.) This motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket No. 21.) The undersigned has reviewed and considered the motion, memorandum, and declaration filed in support of the motion. For the reasons stated below, the undersigned finds that this matter can be resolved without hearing and respectfully recommends that Plaintiff's motion for default judgment be **GRANTED IN PART**.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, a bank, filed its complaint against Defendant, a Tennessee-based company, on February 26, 2024. (Docket No. 1.) Plaintiff alleges that the two parties entered into an agreement wherein Plaintiff financed Defendant's purchase of certain collateral, a 2023 Peterbilt 389-Series truck with VIN 1XPXD49X2PD887757. (*Id.* at ¶¶ 9, 11.) Plaintiff asserts that Defendant granted Plaintiff a first-priority security interest in the collateral, and that Plaintiff then perfected that interest. (*Id.* at ¶¶ 11–12.) Plaintiff contends that Defendant then breached their agreement by failing to make required payments. (*Id.* at ¶¶ 14–15.) As a result of this alleged breach, Plaintiff elected to accelerate the balance due under the agreement and declare the entire indebtedness

immediately due and payable. (*Id.* at ¶ 16.) Plaintiff demanded payment from Defendant, provided Defendant with written notice of its election to accelerate the balance due, and made demand for possession of the collateral. (*Id.* at ¶¶ 17–18.) However, according to Plaintiff, Defendant has failed to pay the balance due and return possession of the collateral. (*Id.* at ¶¶ 26–27.) Accordingly, Plaintiff initiated this lawsuit and asserted the following claims against Defendant: (1) injunctive relief; (2) expedited action to recover personal property pursuant to Tenn. Code Ann. § 29-30-106; and (3) breach of contract. (*Id.* at ¶¶ 31–58.)

After filing its complaint, Plaintiff filed an executed return of summons indicating that it served Defendant on February 12, 2024. (Docket No. 9.) On March 27, 2024, Plaintiff filed a motion for entry of default against Defendant. (Docket No. 11.) However, in an order dated May 22, 2024, the Court denied the motion without prejudice because Plaintiff did not personally serve an individual authorized to accept service of process on behalf of Defendant. (Docket No. 13.) Plaintiff then filed another executed return of summons indicating that it served Defendant on May 25, 2024 (Docket No. 15) and filed another motion for entry of default against Defendant (Docket No. 17), which the Court granted (Docket No. 18).

On October 4, 2024, Plaintiff filed the instant motion seeking default judgment against Defendant. (Docket No. 19.) Defendant has not responded to the motion.

## II. LEGAL STANDARDS AND ANALYSIS

### A. Default Judgment

Under Rule 55(b)(2), a court may enter a default judgment if that court has jurisdiction and the movant has met certain procedural requirements. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108–09 (6th Cir. 1995). For a court to grant a motion for default judgment, the complaint must

state a claim upon which relief can be granted. *Allstate Life Ins. Co. of New York v. Tyler-Howard*, No. 3:19-cv-00276, 2019 WL 4963230 at *1 (M.D. Tenn. Oct. 8, 2019) (internal citations omitted).

Once default has been entered against a party under Rule 55, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including any jurisdictional averments. *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981); *Antoine*, 66 F.3d at 110–11. Even without this admission, the Court finds that jurisdiction is properly asserted over Defendant here. Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, and diversity jurisdiction therefore exists under 28 U.S.C. § 1332.

Due to Defendant's default, the Court is entitled to accept as true the well-pleaded factual allegations of the complaint. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020) (citing *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009)). Default is not, however, considered an admission of damages. *Vesligaj*, 331 F. App'x at 355 ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved.").

To determine damages, the trial court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009). *See also* Fed. R. Civ. P. 55(b)(2)(A) (district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter"); *Vesligaj*, 331 F. App'x at 354.

In its motion, Plaintiff seeks a default judgment against Defendant; entry of a writ of possession regarding the collateral that is the subject of the agreement; injunctive relief; monetary damages in the amount of $188,310.90 plus interest; and reasonable attorney's fees and expenses. (Docket No. 19 at 1–2.) Because the damages in this case – contract damages – are certain and supported by a sworn declaration (Docket No. 20-1), the Court concludes that an evidentiary hearing is unnecessary. Fed. R. Civ. P. 55(b).

**B.     Defendant's Liability**

Plaintiff asserts three claims against Defendant and contends as follows: injunctive relief is necessary to enjoin Defendant from using the collateral, to order Defendant to disclose the location of the collateral, and to enjoin Defendant from restricting Plaintiff from accessing the collateral (Claim 1); Plaintiff is entitled to a writ of possession directing Defendant to surrender the collateral to it (Claim 2); and Defendant is liable under a breach of contract theory for breaching the agreement (Claim 3). (Docket No. 1.)

Default judgment on well-pleaded allegations establishes only liability, not the extent of damages for which a particular defendant is responsible. *Antoine*, 66 F.3d at 110. The Court must, therefore, determine the extent to which Defendant may be held liable for the full amount of damages claimed by Plaintiff.

### 1.     <u>Injunctive Relief (Claim 1)</u>

Injunctive relief is an "extraordinary and drastic remedy" and is "never awarded as of right." *Beckerich v. St. Elizabeth Med. Ctr.*, 563 F. Supp. 3d 633, 638 (E.D. Ky. 2021) (quoting *Munaf v. Geren*, 553 U.S. 674, 690-91 (2008)). Rather, to obtain injunctive relief, a plaintiff must show that: (1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and defendant weighs in favor of

4

a permanent injunction; and (4) it is in the public interest to issue an injunction. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). In the case of a default judgment, the court need not hold an evidentiary hearing to grant a permanent injunction when there are no factual issues in dispute. *See Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 546 (6th Cir. 2005); *Profusion Indus., LLC v. Chem-Tek Sys., Inc.*, No. 5:16-CV-164, 2016 WL 7178731, at *6 (N.D. Ohio Dec. 9, 2016) ("The Court may issue a permanent injunction without an evidentiary hearing when no triable issues of fact are involved.") (citation omitted). The decision to grant a permanent injunction lies within the sound discretion of the Court. *Profusion Indus.*, 2016 WL 7178731, at *6.

The Court is not persuaded that Plaintiff has adequately alleged that it is entitled to injunctive relief. As for the first element, Plaintiff has not sufficiently alleged that it will suffer irreparable injury in the absence of an injunction enjoining Defendant from using the collateral, ordering Defendant to disclose the location of the collateral, and enjoining Defendant from restricting Plaintiff from accessing the collateral.

The Court finds that the facts of this case are similar to those in *BMO Harris Bank, N.A. v. V&C Transp., Inc.*, an opinion that the Court finds persuasive. No. CV 22-53-DLB-CJS, 2022 WL 14131317 (E.D. Ky. Oct. 24, 2022). In *V&C*, a bank sought to collect on a loan in default and to recover the collateral that secured the loan. *Id.* at *1. The bank brought claims for injunctive relief, specific performance, possession of the collateral, and damages for breach of contract. *Id.* The bank moved for a default judgment, which the court granted in part and denied "to the extent that the bank seeks a permanent injunction and specific performance." *Id.* at *2. The court stated:

> In short, the Court is unpersuaded that BMO Harris will suffer irreparable injury in the absence of an injunction. First, a judgment for possession and damages alone entitles the bank to possession of the truck, which accomplishes the same end as an injunction ordering Defendants to surrender the truck to BMO Harris. Second,

5

> while an injunction may make matters easier for the bank by enabling it to self-collect on the collateral without the assistance of a local sheriff or the US Marshals, the Court is not inclined to enter a permanent injunction for that reason alone.
>
> * * *
>
> The Court is further unpersuaded by the bank's assertions that it will suffer irreparable harm in the absence of an injunction. The law is clear that an irreparable injury is one that "is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). This case arises entirely from an amount of money loaned by a bank to a business, and a contract to repay that money. While part of the contract included a security agreement to collateralize the loan by the semi-truck purchased with the money, the loan contract itself exists to ensure that the bank is repaid the money it loaned to Defendants. When Defendants defaulted on the loan, they breached the contract, thus entitling the bank to exercise its available remedies.
>
> In Kentucky, "[t]he measure of damages for breach of contract is that sum which will put the injured party into the same position he would have been in had the contract been performed." *Hogan v. Long*, 922 S.W.2d 368, 371 (Ky. 1995) (internal quotations omitted). Thus, notwithstanding other remedies provided by the Uniform Commercial Code, <u>BMO Harris' general measure of damages in this case is to get back the money it loaned to pay for the truck</u>. The bank's security interest in the truck merely serves as an additional guarantee that it will recoup its money, because after all, the bank wishes to repossess the truck so it may sell the truck for proceeds – not because it wishes to keep the truck itself. For these reasons, even though the bank's loan was collateralized, the bank's damages are nonetheless monetary, as the existence of collateral does not make the bank's damages non-monetary in nature.

*Id.* at *2–3 (emphasis added).

Here, the Court likewise finds that Plaintiff's damages are monetary in nature and can be addressed in the context of its breach of contract claim. As detailed below, Plaintiff will be compensated with monetary damages for Defendant's failure to abide by the terms of the applicable agreement. Further, Plaintiff has asserted a state law claim to recover the collateral at issue, the enforcement of which weakens Plaintiff's argument that it will be irreparably injured absent injunctive relief. For these reasons, the Court finds that the "extraordinary and drastic remedy" of injunctive relief is not appropriate in this instance. *Beckerich*, 563 F. Supp. 3d at 638.

## 2. **Action to Recover Personal Property (Claim 2)**

Next, Plaintiff asks the Court to enter a writ or order of possession in its favor with respect to the collateral pursuant to Tenn. Code Ann. § 29-30-106. (Docket No. 20 at 5–6.) This remedy, which is based in state statute, is available under Rule 64 of the Federal Rules of Civil Procedure, which provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). Under this rule, the remedies available include replevin and "other corresponding or equivalent remedies" under Tennessee law. Fed. R. Civ. P. 64(b).

Under Tennessee law, there is a detailed procedure by which one who is entitled to possession of personal property held by another may recover it. *See* Tenn. Code Ann. §§ 29-30-101, *et. seq.* One specific statute sets forth the procedure for recovering personal property through the issuance of a writ of possession. *Id.* at § 29-30-106. This statute allows the Court to issue an expedited writ of possession if the plaintiff files a verified complaint and a copy of the "writing upon which the alleged claim to possession is founded." *Id.* at § 29-30-106(A)(1).

After meeting that threshold filing requirement, the Court may issue a writ of possession under two broad circumstances. *First*, the Court may issue a writ if the plaintiff provides notice to the defendant of the application; the defendant receives the notice along with the complaint and the "writing upon which the alleged claim to possession is founded"; and the Court finds that plaintiff is entitled to possession of the property or there is no controversy about the plaintiff's claim to possession. *Id.* at § 29-30-106(a)(1)(A). *Second*, the Court may issue a writ if it finds that one of five conditions is met, including that the defendant is concealing the property, is likely to remove the property from the Court's jurisdiction, or is likely to dispose of the property; and the plaintiff posts bond in an amount fixed by the Court that is not less than the value of the property

7

at issue. *Id.* at § 29-30-106(a)(1)(B). If all parts of the second condition are met, the Court must issue a writ that directs an officer to take possession of the property and deliver it to the plaintiff and that directs an officer to summon the defendant to appear and answer within thirty (30) days. *Id.* at § 29-30-106(a)(2)(C).

The Court finds that Plaintiff has sufficiently alleged all elements necessary for the Court to order a writ of possession under Tenn. Code Ann. § 29-30-106(a)(1)(B), or the second condition detailed above. As a preliminary matter, Plaintiff filed a verified complaint and a copy of the agreement at issue, or the "writing upon which the alleged claim to possession is founded" as required under Tenn. Code Ann. § 29-30-106(A)(1). (Docket Nos. 1, 1-1.) Further, Plaintiff alleged in its verified complaint that "[d]ue to the mobile nature of the Collateral and its location, Defendant is capable of and likely to remove the Collateral from the jurisdiction of the Court." (Docket No. 1 at ¶ 42.) This factual allegation has been deemed admitted because default has been entered against Defendant. *See Visioneering Constr.*, 661 F.2d at 124. Accordingly, the Court finds that Defendant is likely to remove the collateral from this Court's jurisdiction as described in Tenn. Code Ann. § 29-30-106(a)(1)(B)(i)(*b*)(*2*).

Although Plaintiff has not posted a bond as set forth in Tenn. Code Ann. § 29-30-106(a)(1)(B)(ii), the Court finds that the setting of a bond is not necessary in this matter because Plaintiff is entitled to damages for Defendant's breach of contract in an amount that exceeds the value of the collateral, as discussed below. *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins. Co.*, 714 F.3d 424, 431 (6th Cir. 2013) ("[T]he rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security.") (quoting *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). (Docket No. 1 at ¶ 40 ("Plaintiff estimates the fair market value of the Collateral to be approximately $70,417.00.").)

8

Case 3:24-cv-00142    Document 22    Filed 05/20/25    Page 8 of 15 PageID #: 108

For these reasons, Plaintiff is entitled to a writ of possession pursuant to Tenn. Code Ann. § 29-30-106 as to the collateral described in the agreement as the 2023 Peterbilt 389-Series truck with VIN 1XPXD49X2PD887757. (Docket No. 1 at ¶ 11.) The writ of possession shall direct the United States Marshal Service to place Plaintiff in possession of the above-described collateral. The United States Marshal Service shall also summon Defendant to appear and answer the writ within thirty (30) days.

### 3. Breach of Contract (Claim 3)

Finally, Plaintiff contends that Defendant has breached the terms of the agreement to finance the collateral. To establish a claim for breach of contract under Tennessee law, a plaintiff must show: (1) the existence of an enforceable contract; (2) non-performance amounting to a breach of that contract; and (3) damages caused by the breach. *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (citing citation omitted). "To be enforceable under Tennessee law, a contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Starnes Family Office, LLC v. McCullar*, 765 F.Supp.2d 1036, 1050 (W.D. Tenn. 2011) (quoting *Doe v. HCA Health Svcs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)) (cleaned up).

Although a contract may be written or oral, it "must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties." *HCA Health Servs. of Tenn.*, 46 S.W.3d at 196 (quoting *Higgins v. Oil, Chem. & Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn. 1991)). A contract's terms are "sufficiently definite if they provide a basis for determining whether a breach has occurred and for giving an appropriate remedy." *Jones v. LeMoyne–Owen Coll.*, 308 S.W.3d 894, 904 (Tenn. Ct. App. 2009).

To state a valid claim for breach of contract, a plaintiff is not required to identify all the terms of an enforceable agreement, but the complaint must "raise a right to relief above the speculative level." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Direct recitals of the elements are unnecessary if the complaint contains "either direct or inferential allegations respecting all material elements." *Id.*

The Court finds that Plaintiff has sufficiently alleged all elements of a breach of contract claim against Defendant. Plaintiff asserts that it entered into an agreement with Defendant; that Defendant failed to make required payments under the agreement; and that Plaintiff has suffered damages because of that failure to make payments. (Docket No. 1 at ¶¶ 9–15, 55.) For these reasons, the Court finds that Plaintiff is entitled to default judgment with respect to its breach of contract claim.

**C.     Plaintiff's Damages**

Plaintiff seeks damages for its breach of contract claim in the total amount of $188,310.90, which is comprised of the following: (1) unpaid principal in the amount of $186,579.99; (2) late fees in the amount of $388.34; and (3) interest in the amount of $1,342.57. (Docket No. 20 at 4; Docket No. 20-1 at ¶¶ 14, 15, 18; Docket No. 20-1 at 9.) To support its request for damages, Plaintiff submitted the declaration of Debb White who is employed by Plaintiff as a litigation specialist. (Docket No. 20-1.) In her declaration, Ms. White references a schedule that includes "the date of default, date of acceleration, interest rates, principal as of default, and fees incurred under the Agreement." (*Id.* at ¶ 7.) The schedule sets forth the amounts detailed above. (*Id.* at 9.)

Based on Ms. White's declaration and the accompanying exhibits, the Court finds that an award of damages is appropriate, including the unpaid principal in the amount of $186,579.99

and late fees in the amount of $388.34. However, the Court finds that the amount of prejudgment interest requested by Plaintiff is not appropriate under applicable Tennessee law and must be modified.

In diversity cases in the Sixth Circuit, "state law governs awards of prejudgment interest." *Estate of Riddle ex rel. Riddle v. S. Farm Bureau Life Ins. Co.*, 421 F.3d 400, 409 (6th Cir. 2005) (quoting *F.D.I.C. v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir. 2000)). Under Tennessee law, "[p]re-judgment interest . . . may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Tenn. Code Ann. § 47-14-123. Tennessee courts have construed this statute to mean that "[a]n award of prejudgment interest is within the sound discretion of the trial court" and will not be disturbed on appeal, "where the evidence supports the trial court's decision." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

Equity is the "foremost" consideration governing the decision of whether to award prejudgment interest. *Id.* "Simply stated, the court must decide whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Id.* Two other criteria are relevant: (1) whether "the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds"; and (2) whether "the existence of the obligation itself is not disputed on reasonable grounds." *Id.* (citations omitted).

Here, the "amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds." *Id.* There is no dispute that Defendant is obligated to Plaintiff. Because the amount of the obligation is certain or can be easily ascertained by a proper accounting and Defendant has not disputed the amount of the obligation on any reasonable basis, the equities support an award of prejudgment interest. Having considered the

entirety of the circumstances, the Court finds that the equities favor the award of prejudgment interest.

Plaintiff calculated the interest rate in two ways. First, Plaintiff calculated interest from December 1, 2023, the date of default, to December 22, 2023, or for 21 days, at 8.05% or $41.72 per day, for a total of $876.12. (Docket No. 20-1 at 9.) In the agreement, the parties agreed that the total cost of credit would include an annual percentage rate of 8.05%. (Docket No. 1-1 at 2.) The Court finds this first calculation of prejudgment interest to be equitable and in line with Tenn. Code Ann. § 47-14-123.

However, Plaintiff's second prejudgment interest calculation exceeds the "maximum effective rate of ten percent (10%) per annum" that is permitted under Tenn. Code Ann. § 47-14-123. According to the schedule attached to Ms. White's declaration, Plaintiff calculated interest from December 22, 2023 to December 27, 2023, or for 5 days, at 18% or $93.29 per day, for a total of $466.45. (Docket No. 20-1 at 9.) Plaintiff also seeks additional interest at a rate of 18% or $93.29 per day from December 27, 2023 to an unspecified date. (Docket No. 20 at 4.) Both rates exceed a rate of 10% per annum and are not, therefore, permissible under Tenn. Code Ann. § 47-14-123.

For all these reasons, the Court finds that prejudgment interest is warranted, but not in the amount sought by Plaintiff. Rather, the Court determines that prejudgment interest is properly awarded on the unpaid principal obligation owed to Plaintiff (1) at a maximum effective rate of 8.05% per annum from December 1, 2023 to December 22, 2023, and (2) at a maximum effective rate of 10% from December 23, 2023 until the final date of judgment. The Court finds that this calculation of prejudgment interest will fairly compensate Plaintiff for the loss of the use of funds to which it was legally entitled without penalizing Defendant for wrongdoing. *Fulmer v. SARCO, GP*, No. M2022-01479-COA-R3-CV, 2023 WL 5787082, at *6 (Tenn. Ct. App. Sept. 7, 2023)

12

Case 3:24-cv-00142    Document 22    Filed 05/20/25    Page 12 of 15 PageID #: 112

(citing *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994); *Otis v. Cambridge Mut. Fire Ins. Co.*, 860 S.W.2d 439, 446 (Tenn. 1992)).

As detailed below, Plaintiff must submit a sworn accounting of the unpaid amount of the agreement as of December 23, 2023 with calculation of prejudgment interest, including per diem, at a maximum effective rate of ten percent (10%) per annum beginning December 23, 2023. Plaintiff must provide the Court with support for this requested amount.

In sum, Plaintiff is entitled to: (1) unpaid principal in the amount of $186,579.99; (2) late fees in the amount of $388.34; (3) interest from December 1, 2023, the date of default, to December 22, 2023, or for 21 days, at 8.05% per annum, or $41.72 per day, for a total of $876.12; and (4) interest from December 22, 2023 to December 27, 2023, or for 5 days, at 10% per annum in an amount to be determined as detailed above.

D.   **Attorney's Fees and Expenses**

In its motion, Plaintiff asks the Court to award it reasonable attorneys' fees and expenses that it incurred in prosecuting this action and to stay the filing period for a motion requesting attorney fees set forth in Rule 54(d)(2). (Docket No. 20 at 4.) Because the loan agreement provides for the payment of fees and costs (Docket No. 1-1 at § 5.2), the Court finds that Plaintiff is entitled to reasonable attorneys' fees in an amount to be determined. Although Plaintiff requests that the time for filing a motion for attorneys' fees be stayed, Plaintiff does not request a specific period of stay and the Court is not inclined grant an indefinite stay.  The Court will however extend the time for Plaintiff to file a motion for attorneys' fees and expenses to 120 days from the date of entry of final judgment under Local Rule 54.01(b) (as currently in effect), subject to further extension upon motion by Plaintiff.

## III. RECOMMENDATION

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. Plaintiff's unopposed motion (Docket No. 19) for default judgment against Defendant Noble Transportation LLC be **GRANTED IN PART**.

2. Plaintiff be required to submit a sworn accounting of prejudgment interest on the unpaid amount of the agreement calculated at a maximum effective rate of ten percent (10%) per annum beginning December 23, 2023, with per diem (amount of interest accruing daily).

3. Judgment be entered against Defendant in favor of Plaintiff for:

    a. compensatory damages in the amount of the unpaid principal of the agreement as of the December 1, 2023 default date of $186,579.99, plus late charges of $388.34;

    b. prejudgment interest from December 1, 2023 to December 22, 2023 of $876.12;

    c. prejudgment interest from December 23, 2023 to present in an amount to be determined by the Court after Plaintiff submits a sworn accounting as directed above;

    d. post-judgment interest accruing at a rate to be computed in accordance with 28 U.S.C. § 1961(b); and,

    e. attorneys' fees and expenses in an amount to be determined upon motion by Plaintiff to be filed within 120 days from the date of entry of final judgment, unless otherwise extended, and in accordance with Local Rule 54.01 (as currently in effect).

4. A writ of possession pursuant to Tenn. Code Ann. § 29-30-106 be entered in favor of Plaintiff as to the collateral described in the agreement as the 2023 Peterbilt 389-Series truck with VIN 1XPXD49X2PD887757. The writ of possession direct the United States Marshal Service to place Plaintiff in possession of the above-described collateral. The United States Marshal Service summon Defendant to appear and answer the writ within thirty (30) days.

5. Plaintiff be required to submit a proposed writ of possession as detailed above.

6. Plaintiff be required to submit a proposed form of judgment conforming to the Court's determination of the relief properly afforded to Plaintiff.

7. A final judgment be entered in this action in accordance with Federal Rule of Civil Procedure 58.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. of Civ. P. 72(b)(2), Local R. 72.02(b). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2), Local R. 72.02(b).

          Respectfully submitted,

          _____
          BARBARA D. HOLMES
          United States Magistrate Judge